IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DAVID ANTON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  4:19-cv-00862-O |
| | § | |
| US BANK NATIONAL ASSOCIATION | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court are Defendant's Motion for Summary Judgment and Brief in Support (ECF Nos. 9-10), filed February 27, 2020; Plaintiff's Sealed Response (ECF No. 18), filed April 13, 2020; and Defendant's Reply (ECF No. 23), filed May 4, 2020. After considering the briefing, the record, and the applicable law, the Court finds that the Motion should be and is hereby **GRANTED**.

**I.   BACKGROUND**

Plaintiff David Anton ("Plaintiff") executed a loan for a principal amount of $656,250 with Defendant, U.S. Bank National Association ("Defendant"). Plaintiff defaulted on the loan. Plaintiff claims he entered into an agreement with Defendant in May 2018 to make three payments in May, June, and July to cure the default. Plaintiff made the first required payment but failed to make the next two payments. Plaintiff argues that Defendant is responsible for failed payments as it changed the Repayment Plan and improperly applied the payments. That fall, Plaintiff made a payment which covered March and April's principal and interest, along with three escrow payments. Later, Plaintiff's made a payment that applied to the principal and interest for June, July, August, and September, along with one escrow payment. In December 2018, the parties agreed to a written

1

Repayment Plan which required two payments in December. Plaintiff's bank reversed the two payments due to insufficient funds. On January 3, 2019, Defendant sent notice via certified mail of a Notice of Default and Intent to Accelerate the Loan Agreement to Plaintiff's address on record.

On May 23, 2019, Defendant mailed Plaintiff via certified mail a Notice of Acceleration. On August 20, 2019, Defendant sent by certified mail a Notice of Foreclosure Sale to Plaintiff informing him of the foreclosure sale scheduled for October 1, 2019. Defendant also filed a Notice of Foreclosure Sale with the office of the Clerk for Tarrant County and posted a Notice of the Foreclosure at the Tarrant County Courthouse.

Plaintiff asserts six claims in this lawsuit: 1) breach of contract; 2) common law fraud; 3) promissory estoppel; 4) violations of the Texas Debt Collection Act ("TDCA"); 5) breach of duty of cooperation; and 6) negligent misrepresentation.

## II.     LEGAL STANDARDS

### A.     Summary Judgment

The Court may grant summary judgment where the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute

as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

### B.     Breach of Contract

In Texas the essential elements of breach-of-contract are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018). However, "a party to a contract who is himself in default under the contract cannot maintain a suit for its breach." *Martin v. Xarin Real Estate, Inc.*, 703 F.2d 883, 889 (5th Cir. 1983) (citing *Green v. A. R. Clark Inv. Co.*, 363 S.W.2d 802, 806 (Tex. Civ. App.—Fort Worth 1962), *rev'd on other grounds*, 375 S.W.2d 425 (Tex. 1964)).

"[W]hen an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing." *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968). "In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *Id.*

### C. Statute of Frauds

#### 1. Breach-of-Contract Claim

A loan exceeding $50,000 must be in writing to be enforceable. Tex. Bus. & Com. Code § 26.02(b). "An agreement regarding the transfer of the property or modification of a loan must therefore be in writing to be valid." *Martins v. BAC Home Loans Servicing*, *L.P.*, 722 F.3d 249, 256 (5th Cir. 2013).

An email can qualify as an agreement in writing under the statute of frauds, and multiple emails can form an agreement as "a court may determine, as a matter of law, that multiple documents comprise a written contract." Tex. Bus. & Com. Code § 322.007; *City of Houston. v. Williams*, 353 S.W.3d 128, 137 (Tex. 2010) (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)). To form an agreement, "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978) (citing *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945)). "Whether a term is material or essential is a legal question that the court examines on a case-by-case basis." *Coe v. Chesapeake Expl., L.L.C.*, 695 F.3d 311, 320 (5th Cir. 2012).

#### 2. Common Law Fraud and Negligent Misrepresentation Claims

Plaintiff cannot bring forth a fraud claim "to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the statute of frauds." *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001) (cleaned up). However, a claim can continue if the fraud or negligent misrepresentation claim "does not fall within the

4

statute of frauds." *See Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (allowing a negligent misrepresentation claim to stand as it did not fall within the statute of frauds). "The statute of frauds does not bar recovery of out-of-pocket damages for fraud." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 734 (Tex. 2018) (citing *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007)). The ability to sustain these damages "depends on the nature of the damages" claimed in relation to the unenforceable contract. *Id.*

### 3. Promissory Estoppel

"If. . . a valid contract between the parties covers the alleged promise, the plaintiff cannot recover for the promise under promissory estoppel." *Gill Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015) (citing *Fertic v. Spencer*, 247 S.W.3d 242, 250 (Tex. App. 2007)). Promissory estoppel will only avoid the statute of frauds if there is ". . . a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds." *Martins*, 722 F.3d at 256–57.

### D. Economic Loss Doctrine

The economic loss doctrine precludes recovery in tort when "the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). In doing so, "Texas distinguishes between economic loss and physical harm." *James v. Bell Helicopter Co.*, 715 F.2d 166, 170 (5th Cir. 1983). However, the economic loss doctrine "does not bar all tort claims arising out of a contractual setting." *Shakeri v. ADT Sec. Services, Inc.*, 816 F.3d 283, 292 (5th Cir. 2016) (citing *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014)).

5

### E. Texas Debt Collection Act

To state a claim under the TDCA, a plaintiff must allege that: (1) the debt at issue is a consumer debt; (2) the defendant is a "debt collector" within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act. Tex. Fin. Code §§ 392.001–392.404.

Section 392.301(a)(8) of the TDCA prohibits "threatening to take an action prohibited by law" pursuant to the collection of a debt. Tex. Fin. Code § 392.301(a)(8). The rule does not prohibit debt collectors from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3). Section 392.301(a)(8) claims premised on a threat of foreclosure "generally turn on whether the mortgage is in default" because "a default generally triggers a mortgagor's right to foreclose." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 478 (5th Cir. 2015) (citing *Wildy v. Wells Fargo Bank, NA*, No. 3:12–CV–01831–BF, 2012 WL 5987590, at *3 (N.D.Tex. Nov. 30, 2012)).

Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." Tex. Fin. Code §392.304(a)(8). The Fifth Circuit has "previously indicated that modification discussions may constitute debt collection activities under the TDCA when those discussions are used as a ruse to collect debt." *Strong v. Green Tree Servicing, L.L.C.*, 716 F. App'x 259, 264 (5th Cir. 2017) (citing *Singha v. BAC Home Loans Servicing, L.P.*, 564 F. App'x. 65, 71 (5th Cir. 2014) (per curiam)).

Section 392.304(a)(19) prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code § 392.304(a)(19). To maintain a claim under section 392.304(a)(19), a plaintiff must allege that the defendant made an "affirmative statement" that was false or misleading. *Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 348 (5th Cir. 2014) (citing *Verdin v. Fed. Nat'l Mortg. Ass'n,* 540 F. App'x. 253, 257 (5th Cir.2013)).

TDCA Section 392.304(a)(14) prohibits a debt collector from falsely representing "the status or nature of the services rendered by the debt collector or the debt collector's business." Tex. Fin. Code § 392.304(a)(14).

To succeed on a TDCA claim, Plaintiff must be able to prove damages. Tex. Fin. Code § 392.001. The Fifth Circuit has held that plaintiffs, to survive summary judgment, must adequately support their claims by explaining "how the defendant's actions, even if they actually occurred, were prohibited by law." *See Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 342–43 (5th Cir. 2012).

Under Texas law, "mental anguish is a form of actual damages." *McCaig*, 788 F.3d at 473. To show an entitlement to mental anguish damages, Plaintiff must provide evidence showing "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the Plaintiff's daily routine," or showing "'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Id.* (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)).

F.   **Duty of Cooperation**

"Wherever the cooperation of a promisee is necessary for the performance of a contract, there is an implied condition of the contract that the cooperation will be given." *Citizens Nat. Bank*

*of Orlando v. Vitt*, 367 F.2d 541, 545 (5th Cir. 1966) (citing *Vanadium Corp. of Am. v. Fid. & Deposit Co. of Md.*, 159 F.2d 105, 108 (2d Cir. 1947)).

When an agreement is in writing, "[t]he written instrument is presumed to embody [the] entire contract, and the court should not read into the instrument additional provisions unless this be necessary in order to effectuate the intention of the parties as disclosed by the contract as a whole." *Danciger Oil & Ref. Co. of Tex. v. Powell*, 154 S.W.2d 632, 635 (1941). An implied covenant must rest on the intention of the parties as found in the agreement, and it must be found to be "within contemplation of the parties that they deemed it unnecessary to express it." *Id.*

### G. Injunctive Relief

Courts grant injunctive relief upon a showing of: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). Injunctive relief is unavailable where there is no underlying claim. *See Filgueira v. U.S. Bank Nat. Ass'n*, 734 F. 3d 420, 423 (5th Cir. 2013).

## III. ANALYSIS

### A. Count I – Breach-of-Contract

Plaintiff and Defendant entered into a contract. Plaintiff breached the contract when he fell behind on the payments. Plaintiff argues he subsequently entered into new contracts with Defendant, and Defendant unilaterally canceled or changed those contracts. This argument fails because even if the emails and Repayment Plan constituted new contracts, Plaintiff failed to follow either payment plan agreed to in those writings. Additionally, Plaintiff argues that Defendant breached the contract by failing to adhere to notice provisions in the Deed of Trust. This argument

also fails because there is no evidence to establish that Defendant did not abide by the timelines set forth in the Note, Deed of Trust, or the Texas Property Code.

        1.        Initial Breach-of-Contract

"To prevail on the breach-of-contract claim, plaintiffs must establish, *inter alia*, that [he] performed or tendered performance on a valid contract." *Thomas v. EMC Mortg. Corp.*, 4:10-CV-861-A, 2011 WL 5880988, at *5 (N.D. Tex. Nov. 23, 2011), *aff'd*, 499 F. App'x 337 (5th Cir. 2012). When one party to a contract commits a material breach of that contract it discharges the other party from further performance. *See, e.g., Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004).

It is undisputed that Plaintiff initially breached the contract by falling behind on payments. Pl.'s App. Supp. Mot. Summ. J. Ex. A (Pl. Decl.) ¶ 3, App. 2, ECF No. 19. The Note says, in reference to default, "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default." Def.'s App. Supp. Mot. Summ. J. Ex. A-1 (Adjustable Rate Note), App. 11, ECF No. 11. Plaintiff argues that he entered into a new contract, via email discussions, in May 2018. Even if those discussions were assumed to constitute a new contract, Plaintiff defaulted on it after the first payment. Pl.'s App. Supp. Mot. Summ. J. Ex. A (Pl. Decl.) ¶ 5, App. 3, ECF No. 19. Plaintiff again argues that they entered into another contract in the December 2018 Repayment Plan. Again, Plaintiff did not uphold the agreement and did not make the payments according to the Repayment Plan, having both payments returned due to insufficient funds. Def.'s App. Supp. Mot. Summ. J. Ex. A-6 (Correspondence, Insufficient Funds), App. 191, ECF No. 11; Def.'s App. Supp. Mot. Summ. J. Ex. A-8 (Correspondence, Insufficient Funds), App. 205, ECF No. 11. It is unreasonable to require Defendant to continue to arrange for a repayment of money already owed to it just to have Plaintiff not make the agreed-upon repayments.

### 2. Timely Notice

In Texas, the mortgagee or trustee must strictly satisfy the times set by the deed of trust and the Texas Property Code Section 51.002(b) and (d). *Univ. Savings Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982). The Texas Property Code "requires that the loan servicer provide notice of default and at least 20 days to cure before giving notice of sale." *Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 830 (5th Cir. 2015). It also requires at least 21 days notice prior to the date of the scheduled foreclosure sale. Tex. Prop. Code Ann. § 51.002(b). The Deed of Trust and Security Instrument requires at least 30 days to cure the default and at least 21 days notice prior to the date of the scheduled foreclosure sale. Def.'s App. Supp. Mot. Summ. J. Ex. A-2 (Deed of Trust), App. 32, ECF No. 11. "The general purpose of [§ 51.002] is to provide a minimum level of protection for the debtor, and it provides only for constructive notice of the foreclosure." *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 361 (5th Cir. 2014). Pursuant to the Texas Property Code,

> [s]ervice of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

Tex. Prop. Code Ann. § 51.002(e).

Here, Plaintiff provides no evidence that Defendant did not meet all requirements for timely notification. The Notice of Default and Intent to Accelerate, dated January 3, 2019, gave over 30 days notice to cure before Defendant would accelerate. Def.'s App. Supp. Mot. Summ. J. Ex. A-7 (Notice of Default and Intent to Accelerate), App. 197, ECF No. 11. Defendant did not send Notice of Acceleration until May 23, 2019, well over any timeline required by the contract or applicable law. Def.'s App. Supp. Mot. Summ. J. Ex. B-1 (Notice of Acceleration), App. 214, ECF No. 11. The Notice of Foreclosure Sale, dated August 20, 2019, gave a foreclosure sale date

of October 1, 2019, again, well over the 21 days required. Def.'s App. Supp. Mot. Summ. J. Ex. B-2 (Notice of Foreclosure Sale), App. 219, ECF No. 11. Defendant provided evidence that notices sent followed the guidelines of § 51.002(e). Plaintiff provides nothing of substance to contest any of the above timeline. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Count I.

      **B.**      **Count II – Statute of Frauds**

Plaintiff's breach-of-contract claim is precluded because Plaintiff fails to provide any evidence of a new contract that satisfies the statute of frauds. Plaintiff's fraud and damages claims are not barred by the statute of frauds as they are separate from the unenforceable contract. Promissory estoppel cannot bar the statute of frauds defense as there is no promise by the defendant to sign a preexisting writing.

           1.      <u>Breach-of-Contract Claim</u>

The principal amount of Plaintiff's loan exceeds $50,000, and the initial agreement between Plaintiff and Defendant satisfies the requirements for § 26.02 as it is in writing and signed by both parties. Def.'s App. Supp. Mot. Summ. J. Ex. A-1 (Adjustable Rate Note), App. 8-18, ECF No. 11. The modification to the loan that occurred in the December 2018 Repayment Plan is a written agreement between the parties which also satisfies the statute of frauds.

Plaintiff fails to demonstrate that he and Defendant reached an agreement in the email correspondence that satisfies the statute of frauds. Here, Plaintiff claims the email exchange formed an agreement as to a new payment plan and schedule to resolve the default by July of 2018. Plaintiff incorrectly analogizes his situation to a case dealing with an email exchange resulting in an agreement between parties. *Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co.*, 622 F.3d 384, 387–88 (5th Cir. 2010). In *Preston*, the emails between parties included a clear payment

11

schedule and obligations arising from the agreement. *Id.* This is unlike the current case; Plaintiff and Defendant state a "plan" to resolve the default by the end of July 2018, but there are no emails provided showing any real details about the amount due or the agreed dates of the payments. Pl.'s App. Supp. Mot. Summ. J. Ex. 8-29 (Emails), App. 53-137, ECF No. 19. Because the emails lack the specific definitions of the essential terms, they cannot constitute a valid agreement.

Even if the discussions about catching up on payments did contain the necessary terms to form an agreement, there is no clear offer and acceptance by the parties. Plaintiff must show evidence of an agreement through an offer and acceptance in writing. The statute of frauds requirement is not satisfied as there is no written evidence of an agreement to resolve the default in May 2018. Therefore, any alleged agreement is unenforceable and Plaintiff's breach-of-contract claims are precluded.

### 2. Common Law Fraud and Negligent Misrepresentation Claims

Plaintiff argues that his claim is allowed because his damages claimed under fraud are distinct from the contract failing to satisfy the statute of frauds. These alleged damages include mental anguish and out-of-pocket costs. Plaintiff claims the out-of-pocket damages include loss of equity, loss of time, payment of improper fees, expenses, out-of-pocket expenses, damages to credit, and charges based on Defendant's misconduct. None of the claimed damages are attempting to enforce the alleged oral agreement. Plaintiff's out-of-pocket expense claims are not barred due to the statute of frauds.

### 3. Promissory Estoppel

Plaintiff provides no evidence of a promise by Defendant to sign any agreement. Promissory estoppel cannot bar the statute of frauds defense because there is no signature or promise to sign an agreement already in writing. *See Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x

326, 329 (5th Cir. 2013) (citing *Maginn v. Norwest Mortg. Inc.*, 919 S.W.2d 164, 168 (Tex. App.—Austin 1999, no writ.)). Promissory estoppel does not cure Plaintiff's statute of frauds defect. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Count II.

    **C.**    **Count III – Economic Loss Doctrine**

Plaintiff claims that the economic loss doctrine does not bar his fraud and misrepresentation claims. However, Plaintiff fails to prove that his injuries were independent of the breach-of-contract. Plaintiff's claim for mental anguish also fails to arise independently of the breach-of-contract because his attempt to prevent Defendant's violation and foreclosure of his home caused his mental anguish.

    1.    <u>Misrepresentation and Fraud</u>

Texas courts have addressed the application of the economic loss doctrine to negligent misrepresentation in that a plaintiff must establish an injury independent of the economic losses recoverable under a breach-of-contract claim. *D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998). Pursuant to Texas law, failure to perform the terms of a contract is a breach-of-contract, not a tort. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986).

Here, Plaintiff's fraud and negligent misrepresentation allegations relate to Defendant's mischaracterization of the payment plans made available to him. Also, Plaintiff suffered economic damages and attorney fees arising out of Plaintiff's attempt to save the Property from foreclosure while handling the servicing issues of Defendants. Notice of Removal, Ex. B-1 (Pl. Orig. Pet.), 24–25, ECF No. 1; Pl.'s App. Supp. Mot. Summ. J. Ex. A (Anton Decl.), App. 10–11, ECF No. 19. Plaintiff relied on Defendant's statements regarding the loan payment plan, and Defendant reneged from that plan. Pl.'s App. Supp. Mot. Summ. J. Ex. A (Anton Decl.), App. 10–11, ECF

No. 19. Plaintiff has not demonstrated that an injury arose independently of the breach of contract. Any economic damages and attorney fees arose from Plaintiff's efforts to prevent the foreclosure. Therefore, the economic loss doctrine bars Plaintiff's fraud and negligent misrepresentation claims.

### 2. Mental Anguish

"Mental anguish is . . . compensable as the foreseeable result of a breach of duty arising out of certain special relationships." *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 600 (Tex. 1993)). Most legal or personal relationships create no duty to avoid causing mental anguish. *Id.* In asserting mental anguish "without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties," recovery is available in a few specific circumstances. *Id.* This includes those instances involving such a shocking or disturbing nature that mental anguish is a foreseeable result. *See id.* (noting the law of mental anguish is rooted in societal judgment about the gravity of certain wrongs and their likely effects). Texas law does not prescribe any "special" or fiduciary relationship between a lender and a borrower. *Fed. Deposit Ins. Corp. v. Claycomb*, 945 F.2d 853, 859 (5th Cir. 1991).

Plaintiff does not demonstrate an event of such shocking or disturbing nature or that the claims are independent of the contract subject matter. In response to Defendant's Motion for Summary Judgment, Plaintiff contends that "[he] has clearly plead[ed] and asserted evidence of . . . mental anguish, that fall outside of the benefit of the bargain damages." Pl.'s Resp. Supp. Def.'s Mot. Summ. J. 7, ECF No. 18. However, the mental anguish arises from Defendant's violation and threat to foreclose. Notice of Removal, Ex. B-1 (Pl. Orig. Pet.), 11, ECF No. 1. Plaintiff's mental anguish would not have occurred without his effort to resolve Defendant's

alleged improper conduct. Therefore, Plaintiff's claims do not fall out of the benefit of the bargain. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Count III.

    **D.    Count IV – Texas Debt Collections Act**

Defendant does not contest it is a debt collector nor that Plaintiff is a consumer under the TDCA. Plaintiff alleges Defendant violated the TDCA under four different sections. Defendant contends Plaintiff's default, the statute of frauds, or a lack of evidence bar these violations. Plaintiff's TDCA claim ultimately fails due to default, the statute of frauds, and insufficient evidence.

        1.    <u>Section 392.301(a)(8) is Barred by Plaintiff's Default</u>

Plaintiff alleges that Defendant violated 392.301(a)(8) of the TDCA when Defendant threatened foreclosure despite the fact that Plaintiff was not in default of his loan. Defendant alleges that Plaintiff's default on the loan allowed it to exercise its contractual rights in pursuing foreclosure. This claim rests on whether Plaintiff was in default at the time Defendant threatened foreclosure.

Here, Plaintiff alleges that the parties had entered into new contracts and that he did not breach the subsequent Repayment Plans. Neither of these allegations are convincing. First, the new Plans are barred under the statute of frauds as described above. The only enforceable contract is the original Note and Deed of Trust. For this reason alone, Defendant held the right to pursue foreclosure.

Second, if the Repayment Plans are somehow enforceable, Plaintiff points to no evidence to suggest that he did not default on those new Plans. Pl.'s Resp. to Summ. J. 5, ECF No. 18. Instead, evidence here shows Plaintiff defaulted on both. The first default on the repayment plans occurred in July 2018, when Plaintiff did not make two adjusted payments in time. Pl.'s App.

15

Supp. Mot. Summ. J. Ex. A (Pl. Decl.) ¶ 5, App. 2, ECF No. 19. The second default occurred in December 2018, when Plaintiff's bank denied payments to Defendant due to insufficient funds. Pl.'s App. Supp. Mot. Summ. J. Ex. A (Pl. Decl.) ¶ 17, App. 2, ECF No. 19.

Defendant held the right to pursue foreclosure because Plaintiff did not render timely payments. Plaintiff's claim under Sec. 392.301(a)(8) fails as a matter of law.

### 2.    Section 392.304(a)(8) is Barred by Inapplicability

Plaintiff claims Defendant violated Section 392.304(a)(8) of the TDCA when Defendant told Plaintiff he could make payments to catch up on his loan balance, but Defendant rejected the subsequent payments. Defendant contends that statements concerning modifications to the loan are inapplicable to the TDCA.

Here, Plaintiff's claim depends on whether discussions involving loan modifications qualify as activities involving debt collection under the TDCA. Plaintiff's claim that he was told he could make payments to cure his default constitutes a discussion involving a loan modification; whether Defendant accepted or rejected payment is immaterial to its right to foreclose. *McCaig*, 788 F.3d at 478. Additionally, Plaintiff does not allege that loan modification discussion was a ruse to collect a debt; therefore Plaintiff's Section 392.304(a)(8) claim fails as a matter of law. *Strong*, 716 F. App'x at 264.

### 3.    392.304(a)(19) is Barred by Statute of Frauds

Plaintiff argues that failing to properly credit payments to his accounts constitutes a false statement in violation of the TDCA Section 392.304(a)(19). Defendant contends that Plaintiff has no written evidence that Plaintiff could make escrow payments in a manner other than as specified by the Deed of Trust, which violates the statute of frauds.

Here, Plaintiff offers no evidence demonstrating the misapplied payment. Plaintiff substantiates his 392.304(a)(19) claim by alluding, uncited, to Defendant's own evidence. Pl.'s Resp. to Summ. J. 8, ECF No. 18. There is no record of exactly how Plaintiff's payments were misapplied. Further, any statements made concerning changes to the loan agreement violates the statute of frauds. Plaintiff's Section 392.304(a)(19) claim fails as a matter of law.

### 4.     392.304(a)(14) is Barred by No Evidence

Defendant contends that Plaintiff makes no specific allegation of how Defendant allegedly misrepresented the status or nature of its business. Furthermore, because Defendant was entitled to foreclose under the express provisions of the Deed of Trust due to the default on the Note, Defendant contends any alleged statements about impending foreclosure were not fraudulent, deceptive or misleading. Plaintiff makes no allegations specific to Section 392.304(a)(14) in its original petition nor in its reply. Without any facts to support this claim, it fails as a matter of law.

### 5.     Damages – Lack of Evidence

Plaintiff alleges lost time damages of at least $1,000 as a direct result of attempting to save the Property from foreclosure and deal with the servicing issues of Defendant, and economic damages and attorney fees in excess of $10,500. Plaintiff also alleges mental anguish as a result of Defendant's general actions involving the loan dispute. Defendant contends that because no foreclosure has occurred, Plaintiff does not have actual damages.

Here, Plaintiff has not sufficiently pled damages to bring a TDCA claim. Plaintiff asks for $11,500 for economic damages/attorney's fees from disputing the debt as well as additional, unnamed expenses. Like in *Thomas*, Plaintiff's evidence does not explain how the defendant's actions were prohibited by law. *See Thomas*, 499 F. App'x at 343. Plaintiff's conclusory

17

allegations of "*unexplained* fees . . . do not constitute evidence of *improper* fees." *Id.* (emphasis in original). Plaintiff lacks evidence of the impropriety of Defendant's actions.

Plaintiff claims mental anguish damages, in addition to his economic damages, stemming from the attempted foreclosure on the house. Any mental anguish suffered by Plaintiff falls well short of the "high degree of mental pain and distress" required for discovery. *See McCaig*, 788 F.3d at 483 (citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1994)) (awarding mental anguish damages to a plaintiff who experienced stress and anxiety so severe that he was hospitalized twice and experienced personality changes). Plaintiff does not evidence anything so severe. Plaintiff pleads that the dispute interfered with Plaintiff's "ability to sleep and perform normal daily activities." Pl.'s App. Supp. Mot. Summ. J. Ex. A (Pl. Decl.) ¶ 28, App. 11, ECF No. 19. Plaintiff fails to identify the exact "nature and duration of the pain," nor does he plead the severity was "more than mere worry, anxiety, vexation, embarrassment, or anger." *Id.* at 482. Plaintiff's mental anguish claim lacks evidence of severity. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Count IV.

### E. Count V – Breach of Duty of Cooperation

Plaintiff asserts that Defendant's misrepresentation concerning the loan agreement impeded Plaintiff's ability to perform his obligation under the loan agreement. In an attempt to cure foreclosure, both parties entered into a written modification plan in December 2018. Def.'s App. Supp. Mot. Summ. J Ex. A. (Walthall Decl.), App. 5, ECF No. 11; Def.'s App. Supp. Mot. Summ. J Ex. A-5 (Repayment Plan Confirmation Letter), App. 185–88, ECF No. 11. Upon entering into the loan agreement, the bank rejected Plaintiff's payments under the December 2018 payment plan for insufficient funds, and Plaintiff was unable to cure the default. Def.'s App. Supp. Mot. Summ. J Ex. A. (Walthall Decl.), App. 4–5, ECF No. 11; Def.'s App. Supp. Mot. Summ. J

Ex. A-6 (Correspondence, Insufficient Funds), App. 191, ECF No. 11. In a previous attempt to help Plaintiff, Defendant offered a payment plan through email, under which Plaintiff failed to submit timely payments. Def.'s App. Supp. Mot. Summ. J Ex. A. (Walthall Decl.), App. 4–5, ECF No. 11. The December 2018 Repayment Plan is the sole modification in writing as no other plan satisfies the statute of frauds. Plaintiff failed to demonstrate that Defendant impeded Plaintiff's ability to honor its contractual obligations. Instead, Plaintiff is wholly responsible for his failure to make the payments.

Thus, the original Note and Deed controls the parties' obligations as Plaintiff has failed to show any modifications to the Defendant's obligations outside of the December 2018 Repayment Plan. The Note and Deed controls the parties' obligations, and Defendant did not breach its duty to cooperate. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Count V.

### F.     Count VI – Injunctive Relief

Plaintiff's claim for injunctive relief fails because he did not demonstrate that he faces a substantial threat of irreparable harm if the court does not grant injunctive relief. Plaintiff did not establish an underlying claim because the court dismissed all of Plaintiff's alleged claims for lack of merit. Plaintiff was unable to establish a genuine dispute of material fact to any and all his claims. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Count VI.

## IV.     Conclusion

For the aforementioned reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Counts I, II, III, IV, V, and VI. Accordingly, Plaintiff's remaining claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **10th day** of **July, 2020**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE